IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **LAWRENCE RUDOLPH** and
2. **LORI MILLIRON**,

    Defendants.

---

### GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR ORDER [ECF NO. 207]

---

The defendants have styled their motion—filed so that there can be only one business day to resolve it before trial—as a motion for "sufficient time to present their cases." But it is, functionally, a motion to suppress about half of the government's evidence without any legal basis and months past the Court's motions deadline. It should be denied.

A couple of observations for the court's consideration:

1. It is simply not true that the defendants have one day. The parties will share the first day with jury selection and openings. The defendants have cross-designated witnesses estimated to take approximately 630 minutes. Assuming 360 minutes of testimony per day (6 hours), that means the parties are jointly taking almost two additional days. That leaves 10 days. Of those 10 days, the government—with the burden of proof—is taking 7-8. That leaves at least 2 days. It is not out of the ordinary or unreasonable for the government to take the most time in a criminal case to present evidence that will convince a jury beyond a reasonable doubt.

2. Of extreme importance, the defendants have been on notice of the government's

1

intention to use approximately 9-10 trial days for almost a month. Not including previous informal discussions, in an email on June 16, 2022, the government explicitly informed defense counsel of its intention to use 9-10 trial days. The defendants did nothing to bring their timing problem to the court's attention since then, including not identifying it at the pretrial conference. Waiting to file this motion until one business day before trial is improper.

3. Requiring the government to cut a large portion of its evidence is a *de facto* motion to suppress. As such it is filed out of time. The defendants did not seek leave to file a late motion when they were on notice of the government's intended number of trial days (almost a month ago).

4. The estimate of trial time here also accords equal time to cross-examination and direct. The estimate of trial time here also assumes that the defendants will take just as long to cross-examine witnesses as it takes the government to elicit testimony on direct. Cross-examination time is outside of the government's control and the defendant's use of that time to develop its own themes and defenses should not entirely be counted against the government.

5. The defendants are not required to stipulate to anything and are not required in any way to take action that would streamline the case. They have exercised that constitutional right here, which is entirely proper. However, it also prolongs the trial.

   a. For example, seven different insurance companies issued policies insuring Bianca's life. The mailing to the insurer in Colorado is the action charged in Count 2. The government offered to bring in only that insurance witness and drafted stipulations summarizing the testimony of the other 6 insurers, which the government expects to be substantively similar. The defendant has decided—as he has the right to do—to require the government to fly those six witnesses into Denver to give functionally identical testimony that will eat up a half day or more

of trial.

    b.    The case could potentially be greatly streamlined if the defendants were willing to adopt the framework of the opinion of one of defendant Rudolph's experts. Rudolph hired a preeminent forensics ballistics expert, Lucien Haag, to review the evidence in this case. As previously observed, Mr. Haag is the sole "will call" witness of either defendant. The defense provided his report to the government late in the evening on June 30, 2022.

    c.    The defendant's expert is crucial because he concluded that the "only matters that are certain is that Bianca Rudolph's gunshot wound *cannot be self-inflicted* as the result of her pulling or depressing the trigger and that the standoff distance is sufficiently close that the fifteen 00 buckshot pellets entered her body en masse producing no scalloping or recognizable, individual satellite pellet injuries." (emphasis added). The defendant's expert further concluded that there are "three choices of Bianca Rudolph's fatal gunshot wound":

> 1) a misadventure of some sort (such as an impactive jar-off) with the Browning shotgun about 4 inches short of being fully inserted in the gun case.
> 2) a careless mishandling of the shotgun by Mr. Rudolph (such as decocking the internal hammer with a live round in the chamber) while engaging in the final seating of the gun in the gun case in preparation for transport back to the U.S.
> 3) an intentional shooting of his wife, made to look like an accident.

    d.    The government proposed potentially adopting the defense expert's framework for greatly streamlining the case. Doing so would possibly make the testimony of several of the government's experts unnecessary: in the best-case scenario, it might shave off about 240 minutes from the government's case. Again, the defendant is well within his rights to refuse to do so, but that choice greatly prolongs the evidence the government must submit.

    6.    Defendant Lawrence Rudolph's witness list may be exaggerated. Several of his experts have conclusions that are inconsistent to a greater or lesser degree with Mr. Haag's. That inconsistency, and the fact that they are designated as may call while he is a will call, makes it

3

less likely they will be called. His witness list also includes Sundeep Gupta who, when interviewed by the government, expressed surprise at being listed and has not been subpoenaed. Months ago, the government told the defendant that if he wanted to obtain foreign witnesses, he should ask the court for a letter rogatory. As far as the government knows, he did not. But he has listed Spencer Kakoma—a former Zambian park ranger—on his witness list. It is unlikely in the extreme that the defendant will be able to go through the formal process necessary to bring him here in the next few days.

## Conclusion

The defendants' motion, if granted, would functionally suppress a large portion of the government's evidence.    This would be unfairly prejudicial in the extreme, and procedurally improper. The government originally asked the court for four weeks in order to present this case, and has worked extremely diligently to cull down its witness list from the dozens and dozens interviewed. Upending all of that preparation on the eve of trial to suppress witnesses that are truly essential to proving a murder beyond a reasonable doubt would not be in the interests of justice.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By:    /s Bryan Fields
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:    /s E. Garreth Winstead
E. Garreth Winstead
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Garreth.Winstead@usdoj.gov
Attorney for the Government

By:    /s J. Bishop Grewell
J. Bishop Grewell
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bishop.Grewell@usdoj.gov
Attorney for the Government

## CERTIFICATE OF SERVICE

       I hereby certify that on the 8th day of July, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

       *s/ Bryan Fields*
       United States Attorney's Office