

# EXPERT REPORTS REVIEW

| | |
|---|---|
| **PREPARED BY:** | RYAN D. COOK, BROWNING SR. DESIGN & ANALYSIS ENGINEER |
| **SUBJECT PRODUCT:** | BROWNING AUTO-5 |
| **DISCLOSURE:** | JULY 11, 2022 |

This report was prepared after reviewing the following documents in relation to the matter of United States of America v. LAWRENCE RUDOLPH, which I received July 5, 2022:

- Report of Rick Vasquez, dated June 28, 2022
- Illustrated Report of Lucien C. Haag, dated June 28, 2022

Upon review of the two reports listed above, I made a request for access to a couple of the specific reports referenced by Mr. Haag and was provided the following on July 8, 2022:

- Report of Tom Griffin, dated May 19, 2022, Trial Exhibit 0411
- Three (3) Reports of Testing: Bianca Rudolph Death Investigation, Charles S. DeFrance
    - December 3 and 10, 2020, Trial Exhibit 0485
    - July 14, 2021, Trial Exhibit 0486
    - June 15, 2022, Trial Exhibit 0489

I made an additional request for 2 specific measurements (one with a photo of the ejection port region) related to the shotgun and the damage of the evidence case, as will be described hereafter.

This report is a compilation of my observations and opinions regarding the materials presented in the reports listed above, the measurements of the firearm and case, as well as information acquired through the sources noted in my previous report dated May 27, 2022. This reports stands to be supplemented if additional information becomes available or revisions are made to the source materials cited.

Following the review of the Illustrated Report of Mr. Haag, I felt uncertain about some of the statements on page 4 related to the defects referred to as the "blast hole" and the "L-shaped" tear, as reproduced below.

**From Illustrated Report of Lucien Haag, Figure 3c of the "blast hole", (cropped)**







**From Illustrated Report of Lucien Haag, pg. 4, (highlights added)**

> as well as the recent June 15, 2022 tests. **Figure 3c** depicts a close-up view of the internal, front area of the evidence gun case with an enlarged view of the label describing the fabric composition. **Figure 3d** shows this same area with a scale. ==The muzzle position at the moment the shotgun discharged was approximately 4-inches from the closed end of the gun case.==
>
> ==An 'L-shaped' tear was observed on one side of the opened gun case which was 25.75-inches from the rear edge of the blast hole.== [See **Figure 3e**] A close-up view of this defect appears in **Figure 3f**. ==This defect constitutes a possible snag site for the operating handle on the Browning Auto 5 shotgun.== **Figure 3g** shows the results for a chemical test for vaporous lead- a product of near-contact gunshot residue.
>
> The location and pattern of the vaporous lead deposits confirms the blast damage to the forward, interior of the evidence gun case was due to the discharge of the shotgun while inside the gun case ==and with the muzzle approximately 4 inches back from the forward end of the gun case.== Thermal effects were also noted ==forward of the blast hole. Infrared photography was only partially successful and indicated a== ==general 'fog' of gunshot residue in the area of the blast hole.==

Based on the photographs in the Illustrated Report, the "blast hole" appears to be more likely the result of a snag of the square corners at the muzzle end of the barrel rib into the lining of the case, followed by a forward movement of the rib relative to the case, thus causing the lining to tear and bunch/gather forward of the tear. It also appears that the lining and foam materials are relatively undamaged in the region between the "blast hole" and the significant damage evident near the tip of the case. The distribution of the NaRh colorimetric reagent on the BenchKote paper shown in Figure 3g (reproduced below) is visibly concentrated in the areas along the very damaged front edges of the case with little, if any, visible in the region identified as the blast hole; only "a general 'fog' of gunshot residue [was indicated] in the area of the blast hole" by Mr. Haag's infrared photography.

**From Illustrated Report of Lucien Haag, Figure 3g**





I noticed a discrepancy in the measurement values provided for the location of the "L-shaped" tear – the 25.75" value in the text of the paragraph reproduced above, versus the 24.75" value noted in Figures 3e and 3f.  I asked for clarification on this location based on photographs taken during the inspection of the evidence case as documented in the report of Tom Griffin; the 24.75" distance to the rear, inside edge of this tear, as measured from the "blast hole" and shown in Figures 3e/3f, was confirmed.

*NOTE: In the annotated image below I have adjusted the location of the termination point for this measurement to the rear, inside edge of the "L-shaped" tear to match the photograph shown in Figure 3f, as inset below.  The corresponding 23.91" and 6.39" lengths of the horizontal and vertical legs of the red triangle are based on a digital scaling of this adjusted image.*

**From Illustrated Report of Lucien Haag, Figure 3e, inset of Figure 3f, (annotated red values added)**



ONE BROWNING PLACE • MORGAN, UTAH • 84050-9326
PHONE: 801.876.2711 • FAX: 801.876.3355



7.11.22
RDC21:54



I do not agree with Mr. Haag that the "L-shaped" tear constitutes a possible snag site for the operating handle. If the muzzle of the shotgun were in fact located at the edge of the "blast hole" as proposed, the distance from the "L-shaped" tear to the muzzle is too short to be related to the operating handle which is approximately 26.25" from the muzzle when the action is closed and ready to fire. The cocking handle is also contoured to remove sharp edges on the protruding end as this is an operating control intended to be frequently handled by the user and therefore is unlikely to snag on the cloth lining of the interior of the case. This "L-shaped" tear is a visibly distinct shape, approximating a 90° corner. This distinct shape will be addressed in a later section.

Based on the above noted concerns, I believe the muzzle of the shotgun was not located approximately 4" from the closed end of the gun case when the fatal round was fired, as suggested. I believe the muzzle was located much closer to the front end of the case, and that a good estimate of the placement and orientation of the firearm in the case may be made based on the indications identified by Mr. Haag and Mr. Griffin in the evidence case as will be subsequently described in the following sections.

In considering the placement and orientation of the shotgun in the case at the moment it discharged, it is important to account for how a Browning Auto-5 shotgun operates – its "long recoil" action of cycling – which is very unique for a semi-automatic shotgun design. Each time this 12 gauge magnum shotgun is fired, the barrel and slide assembly rapidly move together approximately 3.5" in a rearward direction inside the receiver. At the completion of this rearward movement, the slide assembly is retained in position while the barrel assembly is returned to its forward position by a strong return spring system.

An inspection of the ejection port region on this model reveals that the rear edge is located approximately 28.75" from the muzzle with a small gap between the rear end of the slide assembly (located approximately 28.625" from the muzzle) and the rear edge of the ejection port, as shown below, as measured (as requested) on the exemplar shotgun, s/n WT15100242.



ONE BROWNING PLACE • MORGAN, UTAH • 84050-9326
PHONE: 801.876.2711 • FAX: 801.876.3355



7.11.22
RDC21:54



If this distance from the muzzle to the gap between the end of the slide assembly and ejection port is scaled to Figure 3e from the Illustrated Report of Lucien Haag, and the scaled transparent overlay from Figure 1 of the June 15, 2022 Report of Tom Griffin is added near the end of the case, the following layout is the result:

**From Illustrated Report of Haag, Figure 3e and Figure 1 of Griffin 6/15/2022; red values added**



The above figure illustrates the approximate position of the muzzle if the "L-shaped" tear is aligned with the slide assembly/rear ejection port gap. The shape of this tear approximates a 90° corner, matching the lower, rear corner of the ejection port. This places the muzzle forward of the "blast hole" tear by approximately 4", but still within the total envelope of the case by approximately 1". The difference in the location of the blast hole and the extra 1" is based on how the measurements of each report are aligned with the end of the case, as this is difficult to measure precisely due to the extent of the damage at the front of the evidence case and the election whether to define the measurements on the inside or outside surface of the end of the case. In the image above, the location of the left-most edge of the blast hole would be measured as approximately 5" from the outside surface in the transparent overlay image.





If a scaled image of a Browning Auto-5 12 gauge Magnum with a 26" barrel is overlaid on the evidence case with the positioning and orientation in accordance to the measurements above, the resulting combination is shown in the image below. This inverted orientation (trigger toward zipper) also corresponds to the photographs of the scene, as noted in the report from Mr. Haag.

**From Illustrated Report of Haag, Figure 3e and Figure 1 of Griffin 6/15/2022;** *transparent*, **scaled Auto-5 12 gauge Magnum 26" barrel, ejection port gap aligned with "L-shaped" tear**



This positioning and orientation provides good agreement with the "L-shaped" tear in the evidence case. The lining of the evidence case clearly has numerous places where the lining is folded or creased along its length and across its width, providing opportunity for the loose material to become pinched in the receiver/slide gap when the firearm discharged.

In addition, this placement and orientation demonstrates a reasonable fit with the forward tear previously identified as a "blast hole" but which is better explained as a tear resulting from the rearward stroke and subsequent return of the barrel assembly during the long recoil action of the firearm. This initial location of the muzzle is essentially bracketed between the locations provided in the reports of Charles DeFrance for the test firings in 2020/2021 and again in June 2022.





To better visualize the positioning of the case on the firearm when zipped partially closed, the figure below has been rotated to orient the barrel horizontally and the side of the case opposite the firearm has been hidden to represent how it would look if folded closed and zipped to approximately where the trigger guard is exposed.

**From Illustrated Report of Haag, Figure 3e;** *transparent*, **scaled Auto-5 12 gauge Magnum 26" barrel, ejection port gap aligned with "L-shaped" tear; rotated for barrel-horizontal orientation**



This position and orientation also corresponds to the positioning of the case if someone were to hold the forearm of the shotgun in the normal shooting position, the case being pressed against or wrapped around the bottom surfaces of the forearm. The trigger and trigger guard are also accessible outside or near the zipper in this orientation and position.

In contrast, if the top of the barrel and rib were instead aligned to be parallel with the fold line of the case, as illustrated below, it would be difficult to hold onto the forearm from the outside of the case due to the excess material which would be hanging below. If the forearm were to be grabbed through the case in this condition, the case would be pushed upward until the zipper edge contacts the forearm and allows the hold on the forearm to be maintained, as illustrated above.

**From Illustrated Report of Haag, Figure 3e;** *transparent*, **scaled Auto-5 12 gauge Magnum 26" barrel, ejection port gap** *not* **aligned with "L-shaped" tear; barrel horizontal orientation**



ONE BROWNING PLACE • MORGAN, UTAH • 84050-9326
PHONE: 801.876.2711 • FAX: 801.876.3355





The contact between the muzzle end of the barrel rib and the interior lining of the case, approximately 4" behind the inside surface of the case according to the measurement reference in the report of Lucien Haag, resulted after the barrel and slide assembly recoiled to the rear, about 3.5" into the receiver; the range of this movement is illustrated in the green circle below.

**From Illustrated Report of Haag, Figure 3e;** *transparent*, **scaled Auto-5 12 gauge Magnum 26" barrel, ejection port gap aligned with "L-shaped" tear; rotated for barrel-horizontal orientation**



The forceful return of the barrel assembly to its forward position created the tear and bunching of the lining material.  A small amount of sliding of the firearm inside the case due to recoil and a potentially compromised grip on the forearm through the thickness of the padding of the case would not be unexpected and could account for the small discrepancy of approximately 0.5" in apparent location of the "blast hole" rip.  The "L-shaped" tear would have been created at the very beginning of the action cycling as the slide assembly initially began to move into the receiver creating a pinch and tear of the lining, whereas the tearing of the "blast hole" would have occurred after the completion of the rearward movement and coincident recoil of the firearm as a whole, when the barrel assembly alone started its return stroke to the forward position.

The position of the slide assembly at the scene (whether locked open or closed) has not been stated in any of the reports I have reviewed, but it would have been normal for the slide to lock to the rear in the open position after ejection of the empty shotshell hull if, in fact, there was only one round of ammunition in the firearm at the time of the incident, as reported.  Whether the slide locked open or not would not affect the return of the barrel assembly to its default, forward position.

*Concluding Comments and Observations*
Based on the reports that I have reviewed, and their accompanying photographs, regarding the inspection of the evidence case and also based on the dimensions and working operation of the Browning Auto-5 shotgun in question, I conclude that the shotgun was positioned in the case as illustrated immediately above when fired.  Until additional information may become available for evaluation, it is my opinion that in this position and orientation that it was likely that the firearm was held in essentially a normal shooting grip, but likely around the outside of the case, at or near the forearm when it was fired.



7.11.22
RDC21:54